UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELL TRADEMARK MANAGEMENT B.V. §<br>and SHELL OIL COMPANY, §<br>§<br>Plaintiffs, §<br>§<br>§<br>vs. §<br>§<br>WARREN UNILUBE, INC. AND §<br>WARREN OIL COMPANY, INC., §<br>§<br>§<br>Defendants. § | CIVIL ACTION NO. 4:09-CV-2851 |

**DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE TESTIMONY AND REPORT OF PLAINTIFFS' EXPERT DR. LINDA L. GOLDEN**

**NATURE AND STAGE OF THE PROCEEDING**

Discovery in this case closed on October 28, 2010. By Order of the Court dated November 3, 2010, all dispositive motions and non-dispositive motions other than motions *in limine* were to be filed by November 18, 2010. Defendants hereby moves the Court to exclude testimony and report of Dr. Linda L. Golden. This Motion is timely filed, and the matter is now before the Court.

**STATEMENT OF ISSUE TO BE RULED UPON BY THE COURT**

The issue before the Court is whether the report and testimony of Dr. Linda L. Golden should be excluded as unreliable pursuant to Federal Rule of Evidence 702. In order for expert testimony evidence to be considered reliable under Rule 702, the testimony must be: (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) based on a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. The party offering the expert testimony has the burden of establishing, by the preponderance of the evidence, that all requirements have been met. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593 n10 (1999).

# ARGUMENT

## I. BACKGROUND FACTS

Plaintiffs Shell Trademark Management B.V. and Shell Oil Company (collectively, "Plaintiffs") filed this lawsuit against Warren Unilube, Inc. and Warren Oil Company, Inc. (collectively, "Warren") alleging, *inter alia*, trade dress infringement under Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a), and Texas common law. Critical inquiries in a claim for trade dress infringement are whether the plaintiff's trade dress has acquired secondary meaning, and whether there is a likelihood of confusion between the plaintiff's and the defendant's trade dresses. *See, e.g., Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 425 (5th Cir. 1986). Plaintiffs' hired Dr. Linda L. Golden ("Dr. Golden") for the purpose of creating consumer survey evidence on these issues. (Pls.' Dep. Ex. 227.) For the reasons that follow, Dr. Golden's testimony and report should be excluded under Rules 403 and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 137 (1999).

## II. DR. GOLDEN'S TESTIMONY AND REPORT MUST BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 702

Under Federal Rule of Evidence 702, a witness may testify as to scientific, technical or other specialized knowledge if the expert is qualified, the testimony will assist the trier of fact, and: 1) the testimony is based upon sufficient facts or data; 2) the testimony is the product of reliable principles and methods; and 3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

In the *Daubert* case, the United States Supreme Court expanded on Rule 702 and directed the federal district courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but <u>reliable</u>." *Daubert*, 509 U.S. at 593 (emphasis added).[1]

Although errors in a survey's methodology can go merely to the weight accorded to the survey than its admissibility, "questions of weight, when sufficiently accumulated, become so serious as to require exclusion." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 563 (S.D.N.Y. 2007); *see also Citizens Fin. Group, Inc. v. The Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) (upholding the exclusion of survey evidence in a trademark infringement case because the survey "did not suffer from mere technical flaws, but from fatal flaws"); *Simon Property Group L.P. v. MySimon, Inc.*, 104 F. Supp. 2d 1033, 1052 (S.D. Ind. 2000) (excluding surveys under Rule 702 when they were "merely transparent paths to a desired but artificial result, one driven by leading and suggestive questions, distortions of consumer experiences, and without obvious controls); *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1469 (D. Kan. 1996) (holding that the flaws in a trade dress infringement survey "are so substantial and pervasive that they render the survey evidence inadmissible on the question of secondary meaning."); *Jaret Int'l, Inc. v. Promotion In Motion, Inc.*, 826 F. Supp. 69, 74 (E.D.N.Y. 1993) (finding a survey to be inadmissible when it had an unrepresentative sample and untrustworthy methodology); *Toys "R" Us v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1205 (E.D.N.Y. 1983) (excluding a survey under Rule 702 when the court had serious doubts regarding the trustworthiness of the survey).

---

[1] In addition, The Federal Judicial Center addresses the admissibility of survey evidence in the Manual for Complex Litigation. <u>Manual for Complex Litigation</u> (Fourth) § 11.493 (hereinafter the "Manual"). (Defs.' Mot. to Exclude Ex. A.) The Manual identifies seven (7) key factors to consider in evaluating whether a survey is admissible: 1) whether the population was properly chosen and defined; 2) whether the sample chosen was representative of that population; 3) whether the data gathered were accurately reported; 4) whether the data were analyzed in accordance with accepted statistical principles; 5) whether the questions asked were clear and not leading; 6) whether the survey was conducted by qualified persons following proper interview procedures; and 7) whether the process was conducted so as to ensure objectivity.

In this case, the flaws in Dr. Golden's surveys are so systematic and substantial that her report and testimony must be excluded in their entirety. The surveys are based on an unrepresentative universe, include unfair and leading questions, and are premised upon an untrustworthy methodology. The surveys' flaws are fatal, not merely technical, and thus the report and testimony based thereon must be excluded under Rule 702.

### A.     DR. GOLDEN'S REPORT LACKS INDICIA OF RELIABILITY

Dr. Golden's report does not provide any indicia of reliability as is required by Rule 702. Specifically, it is particularly disturbing how removed Dr. Golden was from the survey process and how much reliance she placed on Dr. Tom Jukam ("Dr. Jukam") in the design and implementation of the surveys. During her deposition, Dr. Golden made clear that Dr. Jukam was the true party in charge of the survey process. In fact, _all_ of Dr. Golden's knowledge about how the surveys were implemented and the interviewers were trained came were based on representations made by Dr. Jukam. (Golden Dep. 108-11, Sept. 17, 2010.) Dr. Jukam visited all of the interview sites, whereas Dr. Golden only visited one. (*Id.* at 118.) Dr. Golden wasn't even familiar with the names of the research firms that were hired to do the actual interviewing – they were all chosen and dealt with by Dr. Jukam. (*See id.* at 130-31.) When it came to the issue of validating the survey results, Dr. Golden knew only (from Dr. Jukam) that it was done by "a lady named Donna." (*Id.* at 121-23.) Dr. Golden didn't even know if "Donna" was employed by an independent firm, and she never reviewed the validation forms. (*Id.* at 125.)

For reasons unknown to Warren, Plaintiffs designated Dr. Jukam as a _nontestifying_ witness. Therefore Warren has been completely barred from learning the full details of the survey studies or cross-examining Dr. Jukam on his methodology, procedure and results.

5

Warren has had to rely solely on the representations of Dr. Golden, whose involvement in the surveys was minimal at best.

The Fifth Circuit has warned against admitting "the hearsay opinion of an expert not subject to cross-examination." *See Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993.) The entirety of Dr. Golden's report and testimony is essentially the hearsay opinion of Dr. Jukam, and without subjecting Dr. Jukam to the rigors of cross-examination, such information is untrustworthy and inadmissible. *See Toys "R" Us*, 559 F. Supp. at 1205 (excluding survey evidence on grounds of untrustworthiness because of "an absence of any testimony by others who were responsible for the various parts of the survey."). Moreover, it is fundamentally unjust for Plaintiffs to be permitted to rely on and use expert testimony based on techniques and events to which Warren has had absolutely no access. Warren has had to rely on the representations of Dr. Golden, and although it has been able to cross-examine her, such cross-examination was essentially worthless since she did not have any direct or significant knowledge about how the surveys were conducted. For this reason alone, Dr. Golden's report and testimony should be excluded under Rule 702.

    **B.    DR. GOLDEN DID NOT SURVEY THE APPROPRIATE UNIVERSE**

To the extent that Dr. Golden has been able to provide Warren with information about the survey design and process, that information reveals that the survey design and process were fundamentally flawed. On the most basic level, the survey did not sample an appropriate or representative universe. "The Fifth Circuit has stated that one of the most important factors in assessing the validity of an opinion poll is the adequacy of the "survey universe," that is, the persons interviewed must adequately represent the opinions which are relevant to the litigation." *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1158 (S.D. Tex. 1982)

6

(quotation omitted)). To that end, "[a] survey of the wrong 'universe' will be of little probative value in litigation." *McCarthy on Trademarks and Unfair Competition* § 32:159 (4th ed. 2010). The appropriate universe for a survey is "those purchasers *most likely* to partake of the alleged infringer's goods." *Amstar,* 615 F.2d at 264. The proponent of the survey has the burden of establishing that the universe is proper. *Citizens*, 383 F.3d at 119.

### 1. Dr. Golden's Survey was Underinclusive

Dr. Golden's sampling universe was wholly underinclusive. (Pls.' Dep. Ex. 227 at 3.) Although Dr. Golden identified the relevant population as "consumers of heavy duty motor oil products in the United States," she only sampled "truck drivers visiting large truck stops in the continental USA." (*Id.*) However, the population of purchasers of 15W-40 heavy duty motor oil is *far* more expansive than long-haul truck drivers. Plaintiffs' own website contains different areas for the different users of the ROTELLA® product: Fleets; HD Installed; Construction; Agriculture; and Diesel Pickup. (*See* www.rotella.com.) Dr. Golden's survey thus specifically *ex*cluded a large segment of the relevant population, including users of construction and agriculture equipment and diesel pick up drivers.

Dr. Golden's survey of only long-haul truck drivers in her survey is especially troublesome when Plaintiffs' own documents indicate that *50% of the relevant market* is Class 2C trucks, which are pickup trucks and commercial vans under 10,000 pounds. (Defs.' Motion to Exclude Ex. B.)[2] Warren's rebuttal experts were also particularly critical of the underinclusive nature of Dr. Golden's survey universe. (Pls.' Dep. Ex. 224 at 5-6, 9 (noting that Dr. Golden's sampling frame comprised only a subset of the relevant population); Pls.' Dep. Ex.

---

[2] Warren was unable to ask Dr. Golden about this issue at her deposition because Exhibit B was not produced to Warren until October 1, 2010, approximately two weeks after Dr. Golden's deposition.

7

16481.061-650767v1

242 at 11-16 (stating: "The Golden Surveys violated virtually all of the … principles regarding the proper universe and sampling procedure.").)

An underinclusive survey universe is fatal to the probative value of a survey. *See Winning Ways,* 913 F. Supp. at 1467. The Tenth Circuit has even held that "[a] survey is inadmissible when the sample is clearly not representative of the universe it is intended to reflect." *Bank of Utah v. Comm'l Sec. Bank*, 369 F.2d 19, 27 (10th Cir. 1966). Even if it is logistically difficult to survey all subsets of a population, "the geographical area surveyed cannot be based on mere sampling convenience rather than upon scientific or sampling grounds." *McCarthy* at § 32:161; *Citizens*, 383 F.3d at 119.

Since the universe Dr. Golden sampled is so fundamentally flawed, the Court need not go any further and consider Dr. Golden's methodology. This Court has previously held that when "a survey failed to examine the proper universe, the survey must be discounted in its entirety, and inquiry into the integrity of the methodology is unnecessary." *King-Size*, 547 F. Supp. at 1158 (internal citations omitted). Dr. Golden's report and testimony are therefore inadmissible.

### 2. Dr. Golden's Survey Location was Biased Toward ROTELLA® Users

Not only were the survey locations designed to result in an underinclusive sample, they were also biased in favor of ROTELLA® users. As stated above, the proper universe is composed of those who are most likely to use the junior user's goods, in this case, the Lubriguard product. *See Amstar*, 615 F.2d at 264. Dr. Golden claims that she surveyed the relevant population by limiting the respondents to the survey to those who had purchased motor oil in one of several stores in which the Lubriguard product is sold. (Pls. Dep. Ex. 227 at 4.) However, Dr. Golden improperly focused on individuals who may have *in the past* been customers of the Lubriguard product. A survey is only probative and meaningful if it is

conducted among individuals who are contemplating a *future* purchase. *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984). While Dr. Golden ensured that the respondents planned on purchasing motor oil for a diesel truck in the next six months, she did not ensure that the respondents planned on purchasing motor oil for a diesel truck in the next six months *from a retail outlet at which Lubriguard is available*. (Pls.' Dep. Ex. 227 at 4.)

In addition, *each* of the truck stops at which Dr. Golden conducted the surveys sold the ROTELLA® product, but *none* of them sold the Lubriguard product. (Pls.' Dep. Ex. 242 at 14.) As a result, Dr. Golden's surveys ensured that there would be a low probability that Lubriguard purchasers would be surveyed. *See Jaret*, 826 F. Supp. at 73 (by conducting a survey in a mall where only the senior mark was sold, the surveyor minimized the probability that a fair sampling of the junior mark users were surveyed).

The location of Dr. Golden's surveys were unquestionably biased in favor of finding a population of ROTELLA® users and not Lubriguard users. Dr. Golden's failure to ensure the proper universe and fairness of her surveys mandates their exclusion.

### C.  DR. GOLDEN'S SECONDARY MEANING SURVEY WAS SUGGESTIVE AND ASKED IMPROPER LEADING QUESTIONS

In the Secondary Meaning survey, Dr. Golden engaged in improper questioning techniques that guaranteed survey results in ROTELLA®'s favor. First, before showing the respondents the redacted ROTELLA® bottle, Dr. Golden's interviewers informed the interviewees that they were "doing a short survey *about motor oils*." (Pls.' Dep. Ex. 227 at Ex. B.) Then, before asking the interviewees whether they recognized the bottle they were shown, the interviewers stated: "Please look at this picture of a *heavy duty motor oil container*…If you have an opinion, what is the brand of *motor oil product* in the picture I showed you?" (*Id.* (emphasis added).) Thus, before the survey even started, the interviewees were thinking about

9

motor oil products and prompted to identify a brand of heavy duty motor oil.  This suggestive manner of questioning is especially troublesome since ROTELLA® is the market leader in heavy duty motor oils.  (*See* Pls.' Dep. Ex. 224 at 4; Pls. Dep. Ex. 242 at 25.)

Second, Dr. Golden's survey design guaranteed that the secondary meaning study would result in the respondents identifying the container as coming from a single source.  Specifically, the survey asked, "If you have an opinion, what *company* puts out the motor oil in the picture I showed you?"  (Pls.' Dep. Ex. 227 at Ex. B.)  This resulted in the respondents being prompted to identify only one company or source of the product, whereas a question asking "what company *or companies* puts out the motor oil" would be neutral and lead to a more accurate result.  (*See* Pls.' Dep. Ex. 224 at 4; Pls.' Dep. Ex. 242 at 25-29.)  This manner of questioning has been criticized as leading, since "[s]urvey questions which beg their answers cannot be a true indicator of the likelihood of consumer confusion, and cannot be relied on to create an issue of fact so as to make summary judgment improper." *See Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 630 (E.D. Va. 1986); *see also Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 138 (D. Mass. 2003) (holding that the question "What company do you think puts out these products?" was leading because it "presumed the existence of the key element in a secondary meaning enquiry, namely the association of the design with a single source.").[3]

### D.   DR. GOLDEN'S SURVEYS DID NOT ACCURATELY REPLICATE MARKET CONDITIONS

When conducting a survey, it is important to replicate market conditions as closely as possible so as to achieve accurate results.  *See Westchester Media Co. L.P. v. PRL USA*

---

[3] Dr. Golden has pointed to Professor McCarthy's statement that such criticism is "overly rigid and strict," yet it is notable that although this statement appeared in Professor McCarthy's May 2007 edition of his treatise, he specifically *removed* it from the more current edition.  *See McCarthy*, § 32:172 (4th ed. 2010).

10

*Holdings, Inc.,* 103 F. Supp. 2d 935, 967 (S.D. Tex. 1999), *aff'd in relevant part,* 214 F.3d 658 (5th Cir. 2000). However, Dr. Golden did not replicate market conditions in her survey.

First, Dr. Golden surveys only showed photographs of the products at issue to the survey respondents. In doing so, the survey respondents were limited to viewing only a two-dimensional view of the front of the product; respondents were unable to see the backs or sides of the product, which evidence quite marked differences. (*See* Defs.' Dep. Exs. 85, 91, 92, 106, 113; Pls.' Ex. 242 at 19-20.) Under real marketplace conditions, consumers are permitted to see a product from all angles, as well as touch and lift the product. The respondents to Dr. Golden's surveys did not have that option, and thus their perceptions of the products were not reliable.

In addition, the control used by Dr. Golden in the secondary meaning study was entirely implausible and not reflective of an actual heavy duty motor oil product on the market today. It was an old-fashioned F-style bottle, whereas today most heavy duty motor oil products are in more stylized, and often dual-handled, bottles. (*See* Pls.' Ex. 242 at 30-31.) In addition, Dr. Golden painted her control a dull brown color with a completely blacked out label. Since the purpose of the control was to account for "noise," i.e., reasons for the respondents' answers unrelated to the products' appearances, the control should have been as similar as possible to the ROTELLA® bottle. (*See* Pls.' Ex. 224 at 6-7; Pls.' Ex. 242 at 29-30.) To the contrary, Dr. Golden's survey used a control that was entirely commercially unviable and could not appear more different than ROTELLA®. The surveys thus did not replicate market conditions.

**E. THE CUMULATIVE EFFECT OF THE SHORTCOMINGS OF DR. GOLDEN'S REPORT RENDER THE REPORT AND ANY TESTIMONY THEREFROM INADMISSIBLE**

Based on the above, Dr. Golden's surveys were based on an inadequate universe and sample, were biased and relied on leading questions, and lack any indication of reliability or

11

accuracy. While these flaws are fatal on their own, their combination and cumulative effect render Dr. Golden's report and testimony inadmissible under the standards set forth in the Manual, federal case law, and Rule 702.

### III. ALTERNATIVELY, DR. GOLDEN'S REPORT AND TESTIMONY SHOULD BE EXCLUDED UNDER RULE 403

Even if the Court determines that Dr. Golden's report and testimony satisfy the threshold scrutiny of Rule 702, they should be excluded under Rule 403. *Daubert*, 509 U.S. at 595. Rule 403 permits the Court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The severe deficiencies in Dr. Golden's report and the testimony based thereon have a significant risk of misleading the jury and otherwise unfairly prejudicing Warren. As noted by the Third Circuit, if a survey "universe is skewed, then the conclusion will similarly be skewed. If an expert, a person with special knowledge and expertise, testifies as to the skewed results, a jury is likely to give special weight to the skewed conclusion." *Citizens*, 383 F.3d at 120 (quotation omitted). Warren urges the Court to exercise the "gatekeeping" function recognized by *Daubert* and prevent the jury from hearing and giving special weight to unreliable evidence.

### CONCLUSION

For the reasons set forth above, Warren respectfully requests that the Court exclude the report and testimony of Dr. Golden.

Respectfully submitted, this the 18th day of November, 2010.

| | |
|---|---|
| OF COUNSEL: | ANDREWS KURTH LLP |
| ANDREWS KURTH LLP | |
| John P. Courtney, State Bar No. 04892200 | By: ___/s/ David P. Whittlesey___ |
| jcourtney@andrewskurth.com | David P. Whittlesey, State Bar No. 00791920 |
| 600 Travis Street, Suite 4200 | Southern Dist. of TX Bar No. 18086 |
| Houston, TX 77002 | 111 Congress Avenue, Suite 1700 |
| Telephone: (713) 220-4078 | Austin, TX 78701 |
| Facsimile: (713) 238-7162 | Telephone: (512) 320-9330 |
| | Facsimile: (512) 320-9292 |
| | dwhittlesey@andrewskurth.com |
| WYRICK ROBBINS YATES & PONTON LLP | ATTORNEY IN CHARGE FOR DEFENDANTS |
| Benjamin N. Thompson, admitted *pro hac vice* (Lead Counsel) | |
| bthompson@wyrick.com | |
| Lee M. Whitman, admitted *pro hac vice* | |
| lwhitman@wyrick.com | |
| Sarah M. Johnson, admitted *pro hac vice* | |
| sjohnson@wyrick.com | |
| 4101 Lake Boone Trail, Suite 300 | |
| Raleigh, NC 27607 | |
| Telephone: (919) 781-4000 | |
| Facsimile: (919) 781-4865 | |

16481.061-650767v1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

>Griffith B. Price, Jr.
>Griff.price@finnegan.com
>Naresh Kilaru
>Naresh.kilaru@finnegan.com
>Finnegan Henderson Farabow Garrett & Dunner LLP
>901 New York Avenue NW
>Washington, DC  20001
>
>Paul C. Van Slyke
>pvanslyke@lockelord.com
>Bruce J. Cannon
>bcannon@lockelord.com
>Locke Lord Bissell & Liddell LLP
>600 Travis Street, Suite 3400
>Houston, TX  77002

This the 18th day of November, 2010.

>/s/ David P. Whittlesey
>David P. Whittlesey, State Bar No. 00791920
>Southern Dist. of TX Bar No. 18086
>111 Congress Avenue, Suite 1700
>Austin, TX 78701
>Telephone: (512) 320-9330
>Facsimile: (512) 320-9292
>dwhittlesey@andrewskurth.com

16481.061-650767v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELL TRADEMARK MANAGEMENT B.V. § <br> and SHELL OIL COMPANY, § <br> § <br> Plaintiffs, § <br> § <br> § <br> vs. § <br> § <br> WARREN UNILUBE, INC. AND § <br> WARREN OIL COMPANY, INC., § <br> § <br> § <br> Defendants. § | CIVIL ACTION NO. 4:09-CV-2851 |

## **ORDER**

On this day, the Court considered Defendants' *Daubert* Motion to Exclude Testimony and Report of Plaintiffs' Witness Dr. Linda L. Golden. After considering the foregoing Motion, the Court hereby GRANTS the motion.

IT IS SO ORDERED

SIGNED at Houston, Texas, on this the _____ day of _____, _____.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELL TRADEMARK MANAGEMENT B.V. and SHELL OIL COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>WARREN UNILUBE, INC. AND WARREN OIL COMPANY, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 4:09-CV-2851<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**APPENDIX TO:**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY AND REPORT OF DR. LINDA L. GOLDEN**

**Exhibits and Deposition Testimony:**                                                                                                    **Page**

Exhibit A ...................................................................................................................................A-1
Exhibit B....................................................................................................................................A-5

   Plaintiffs' Deposition Exhibits

224.............................................................................................................................................A-7
227...........................................................................................................................................A-29
242.........................................................................................................................................A-123

   Defendants' Deposition Exhibits

116.........................................................................................................................................A-192
117.........................................................................................................................................A-210

2

Deposition Testimony

Linda L. Golden, Ph.D. ..............................................................................................................A-237

Gabriel Gelb, Ph.D. ...................................................................................................................A-311

Ran Kivetz, Ph.D. ......................................................................................................................A-375

3