UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHELL TRADEMARK MANAGEMENT B.V. and SHELL OIL COMPANY, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:09-CV-2851 |
| vs. | § § | |
| WARREN UNILUBE, INC. and WARREN OIL COMPANY, INC., | § § § | |
| Defendants. | § § | |

# REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Of Counsel:**

| | |
|---|---|
| Michael O. Sutton | Griffith B. Price, Jr. |
| State Bar No. 19535300 | Attorney in Charge |
| Southern District No. 5941 | District of Columbia Bar No. 429585 |
| Paul C. Van Slyke | Admitted Pro Hac Vice |
| State Bar No. 20457000 | Naresh Kilaru |
| Southern District No. 531 | District of Columbia Bar No. 478983 |
| Bruce J. Cannon | Admitted Pro Hac Vice |
| State Bar No. 24055258 | FINNEGAN, HENDERSON, FARABOW, |
| Southern District No. 675598 | GARRETT & DUNNER, L.L.P. |
| LOCKE LORD BISSELL & LIDDELL LLP | 901 New York Avenue, N.W. |
| 600 Travis Street, Suite 3400 | Washington, D.C. 20001 |
| Houston, Texas 77002 | Telephone: 202-408-4000 |
| Telephone: 713-226-1200 | Facsimile: 202-408-4400 |
| Facsimile: 713-223-3717 | gbprice@finnegan.com |
| msutton@lockelord.com | naresh.kilaru@finnegan.com |
| pvanslyke@lockelord.com | |
| bcannon@lockelord.com | **ATTORNEYS FOR PLAINTIFFS** |

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ................................................................................1

STATEMENT OF ISSUES .......................................................................................................1

ARGUMENT.............................................................................................................................1

I.  Defendants' Application of *Seabrook* to the Record Evidence Fails to Raise a Genuine Issue as to Inherent Distinctiveness........................................................................1

II. Shell's Trade Dress Has Been Consistently and Specifically Defined, and There Is No Genuine Issue that the Overall Appearance of That Trade Dress Has Been Stable and Consistent................................................................................................5

III. Defendants' Anticompetitive Concerns Are Misplaced and Ignore the Critical Distinction Between Product Configuration and Product Packaging Trade Dress..............8

IV. Defendants' Other Arguments Are Without Merit ............................................................10

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................................................3

*Black & Decker Corp. v. Emerson Elec. Co.*,
   84 U.S.P.Q.2d 1482 (T.T.A.B. 2007) (copy attached at Exhibit 1)............................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................................3

*Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*,
   659 F.2d 695 (5th Cir. Unit A Oct. 1981)..............................................................7, 9

*Fiji Water Co. v. Fiji Mineral Water USA*,
   2010 WL 3835673 (C.D. Cal. Sept. 30, 2010) (copy attached at Exhibit 3)............9

*Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*,
   667 F. Supp. 1221 (N.D. Ill. 1987) ............................................................................8

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997)....................................................................................8, 9

*Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*,
   703 F. Supp. 2d 777 (N.D. Ill. 2010) (copy attached at Exhibit 2)............................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)......................................................................................................3

*Regal Jewelry Co. v. Kingsbridge Int'l, Inc.*,
   999 F. Supp. 477 (S.D.N.Y. 1998)..............................................................................4

*Rose Art Indus., Inc. v. Swanson*,
   235 F.3d 165 (3d Cir. 2000)....................................................................................6, 7

*Seabrook Foods v. Bar-Well Foods*,
   568 F.2d 1342 (C.C.P.A. 1978) ..................................................................................1

*Sicilia Di R. Biebow & Co. v. Cox*,
   732 F.2d 417 (5th Cir. 1984) ......................................................................................9

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991) ....................................................................................6

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*
    529 U.S. 205 (2000)..............................................................................................4, 9

*Yurman Design v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)...................................................................................8, 9

**RULES**

Fed. R. Civ. P. 56(c) ...............................................................................................................3

## NATURE AND STAGE OF PROCEEDING

On December 9, 2010, defendants filed their opposition to Shell's motion for partial summary judgment. Shell's reply to that opposition brief is set forth below.

## STATEMENT OF ISSUES

Because defendants have conceded Shell's trade dress is nonfunctional, the only issue for determination is whether defendants have raised any genuine issues of material fact as to the inherent distinctiveness of Shell's ROTELLA trade dress that would prevent the Court from granting Shell's motion for partial summary judgment.

## ARGUMENT

As detailed below, defendants have failed to come forward with any evidence that raises a genuine issue of material fact as to the inherent distinctiveness of Shell's ROTELLA trade dress. Shell's motion for partial summary judgment should accordingly be granted.

**I. Defendants' Application of *Seabrook* to the Record Evidence Fails to Raise a Genuine Issue as to Inherent Distinctiveness**

As set forth in Shell's moving brief, Shell's ROTELLA trade dress is inherently distinctive as a matter of law because, under the test set forth in *Seabrook Foods v. Bar-Well Foods*, 568 F.2d 1342 (C.C.P.A. 1978), Shell's container is not a common or basic design in the field of heavy duty motor oil products or otherwise. To establish its trade dress is unique in the relevant field, in its moving brief Shell relied on images of *30 different* motor oil containers and labels that do not have a trade dress remotely similar to Shell's. (Pls.' Mot. Summ. J. Ex. 23.)[1] Shell then challenged defendants to come forward with evidence of *any* motor oil product on the

---

[1] Contrary to defendants' assertions, Shell does not define the relevant field as being restricted to 15W-40 products. Exhibit 23 contains images across the entire spectrum of motor oils, including 5W-30, 5W-40, 10W-30, 10W-40, 10W-50, 10W-60, 20W-50, and others grades of motor oil.

market "that even remotely resembles the overall distinctive visual identity created by the combination of features of the ROTELLA trade dress." (Pls.' Mot. 21.)

In an attempt to create a genuine issue on inherent distinctiveness and avoid summary judgment, defendants point to the following evidence to establish Shell's overall trade dress is commonly used in the industry: (1) a *single* white container and other "light colored" containers; (2) various containers with dual handles that are curved and "arguably" crescent-shaped; and (3) various containers that have "yellow or blue" or "yellow and blue" on their labels. (Defs.' Opp'n to Pls.' Mot. Summ. J. 12.) The specific containers that defendants reference in their brief (and which they presumably contend create a genuine issue as to inherent distinctiveness) are reproduced below:



Obviously, *none* of the products above even remotely resembles the overall distinctive visual identity of ROTELLA:



Accordingly, *none* of the containers cited by defendants,[2] either alone or in combination, creates a genuine issue as to inherent distinctiveness. Because the undisputed facts show that Shell's trade dress is not a "common, basic shape or design" in the motor oil industry, and no jury could reasonably conclude otherwise based on the evidence presented by both parties, Shell is entitled to a summary judgment determination that its trade dress is inherently distinctive. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c) . . . [t]he nonmoving party must come forward with '*specific facts* showing that there is a genuine issue for trial.'") (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (summary judgment is appropriate where the nonmovant's evidence is merely colorable or not significantly probative); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986) ("One of the principal purposes of the summary

---

[2] Defendants also cite Shell's use of elements of its trade dress *on its own* "Ladder of Protection" products as evidence that Shell's trade dress is "common" and "generic" in the industry. Such reasoning defies common sense. The fact that Shell uses elements of its own trade dress across multiple ROTELLA product lines actually *strengthens* rather than weakens its trade dress, and increases the likelihood of confusion with defendants' trade dress. *See Black & Decker Corp. v. Emerson Elec. Co.*, 84 U.S.P.Q.2d 1482, 1492 (T.T.A.B. 2007) (fact that plaintiff used a family of marks on a range of products increased the likelihood of confusion because consumers would view defendant's product sold under a similar mark as an addition to plaintiff's group of products) (copy attached at Exhibit 1); *Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC,* 703 F. Supp. 2d 777, 788 (N.D. Ill. 2010) ("A family of marks is stronger than a single mark" and use of family of marks supported finding of likelihood of confusion in granting preliminary injunction) (copy attached at Exhibit 2).

judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . .").

Summary judgment is particularly appropriate here given the overriding decisional law (including decisions by the Supreme Court and Fifth Circuit Court of Appeals) holding that product packaging trade dress is *generally* inherently distinctive. (*See* Pls.' Mot. 18-19, Ex. 28.) As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*:

> The attribution of inherent distinctiveness to certain categories of word marks and product packaging derives from the fact that the very purpose of attaching a particular word to a product, or encasing it in a distinctive packaging, is most often to identify the source of the product. Although the words and packaging can serve subsidiary functions . . . their predominant function remains source identification. Consumers are therefore predisposed to regard those symbols as indication of the producer, which is why such symbols "almost *automatically* tell a customer that they refer to a brand," and "immediately . . . signal a brand or a product 'source.'"

529 U.S. 205, 212 (2000) (citations omitted).

Significantly, defendants are unable to cite any cases to the contrary, and the *single* case they cite in which a court found packaging trade dress to lack inherent distinctiveness itself recognized that product packaging is generally inherently distinctive. *See Regal Jewelry Co. v. Kingsbridge Int'l, Inc.,* 999 F. Supp. 477, 489 (S.D.N.Y. 1998) (noting the "tendency" for product packaging to be inherently distinctive "because the whole universe of materials and designs is available for packaging"). In *Regal Jewelry*, the court found that plaintiff's trade dress lacked inherent distinctiveness because it basically consisted of a *plain rectangular box* for packaging novelty items (with a color photograph of the novelty item displayed on the front and back of the box), and the evidence showed these design features were "extremely common" in the novelty item industry. *Id.* at 489-90. Such packaging is obviously a far cry from the unique combination of features that comprise Shell's trade dress and the situation here where defendants

4

cannot point to *any other motor oil product* on the market—besides their own infringing trade dress—that comes close to resembling the overall visual identity of ROTELLA.

II.     **Shell's Trade Dress Has Been Consistently and Specifically Defined, and There Is No Genuine Issue that the Overall Appearance of That Trade Dress Has Been Stable and Consistent**

Contrary to defendants' assertions, Shell has consistently defined its trade dress throughout this litigation, and defendants should have no doubt as to the parameters of that trade dress because they are clearly set forth in Shell's Amended Complaint. (Pls.' Am. Compl. ¶13.) For the avoidance of any doubt, however, Shell's trade dress consists of the *total image and overall appearance* of the ROTELLA product appearing on page 5 of its Amended Complaint (*i.e.*, the packaging that Shell released in September 2007), and includes, among other things:

- the overall shape and relative dimensions of the container;

- a curved (*i.e.*, crescent-shaped),[3] bifurcated,[4] and indented handle;

- a dominantly yellow-and-blue label[5] on an opaque white container with a black cap on the pouring spout; and

- the positioning of the ROTELLA® T brand name in black letters on a white stripe about one-third of the way from the top of the label, with the SHELL house mark

---

[3] Although Shell does not use the term "crescent-shaped" in its Amended Complaint, this term further describes the curvature of the dual handle that is pictured on page 5 of the Amended Complaint.

[4] Defendants argue that Shell's definition of its trade dress has changed because Shell uses the term "dual" rather than "bifurcated" in its opposition to defendants' summary judgment motion. This is nonsense, as these terms are obviously synonymous when used to refer to the ROTELLA container. Defendants themselves have not articulated any difference in meaning between these terms.

[5] In its opposition to defendants' motion for summary judgment, Shell further elaborated that yellow was primarily on the left, and blue was primarily on the right of the label. Again, this simply reflects the reality of the label's overall appearance as shown on page 5 of Shell's Amended Complaint, and does not make Shell's definition of its trade dress inconsistent as defendants contend.

appearing in the upper left corner of the label and the words "Heavy Duty Motor Oil" and the technical specifications of the product positioned immediately below the brand name.[6]

(Pls.' Am. Compl. ¶ 13, ECF No. 12.)

The ROTELLA packaging appearing on page 5 of Shell's Amended Complaint is reproduced below as Figure 2. Given that the overall appearance of that packaging is virtually identical to the packaging released in 2009 (Figure 3 below) and the 2009 packaging contains nearly all of the trade dress elements identified above,[7] Shell's trade dress for the purposes of this lawsuit encompasses both the 2007 and 2009 packaging versions (Figures 2 and 3):



| **Figure 1** | **Figure 2** | **Figure 3** | **Figure 4** |
| October 2006 - September 2007 | September 2007 - October 2009 | October 2009 - present | June 2010 - present |

A plaintiff in a trade dress infringement case is free to define its trade dress in any way it

---

[6] While Shell does not specifically mention the placement of the words "Heavy Duty Motor Oil" and technical specifications in describing its trade dress in its opposition to defendants' summary judgment motion, that omission is irrelevant since Shell's trade dress is defined in terms of its *overall appearance*. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1118 (5th Cir. 1991) (trade dress is the "total image and overall appearance" of a product), *aff'd*, 505 U.S. 763 (1992). Shell's opposition brief simply listed certain elements of that overall appearance, without excluding others.

[7] The only elements absent from the 2009 version (Figure 3) are the words "Heavy Duty Motor Oil" and the technical specifications of the product positioned immediately below the brand name, which are a comparatively minor feature of the overall appearance of the 2007 packaging.

6

sees fit. *See Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 173-75 (3d Cir. 2000) (cited by defendants) ("In presenting a case for trade dress infringement, a plaintiff can group together any number of products in any way it sees fit, as long as the products have a consistent overall look. . . . [A] trial court should consider only the products or packaging for which the plaintiff is seeking trade dress protection."). Contrary to defendants' assertions, Shell has never alleged in this lawsuit that defendants infringed the trade dress shown in Figures 1 or 4, or a "family" trade dress represented by all four packaging versions shown above.[8]

As to the packaging versions shown in Figures 2 and 3, there can be no genuine dispute they have a "consistent overall look." *Id.* at 173 (having a "consistent overall look" does not mean packaging must be identical; slight variations are allowed "so long as the change does not alter the distinctive characteristics and the trade dress conveys a single and continuing commercial impression" (citation omitted)). Indeed, the overall commercial impression of the 2007 and 2009 packaging versions is virtually identical; no reasonable jury could conclude otherwise. Both versions have (1) the same exact container shape and dimensions; (2) the same crescent-shaped, dual, indented handle; (3) an opaque white container with a black cap; (4) a dominantly yellow-and-blue label (with yellow primarily on the left and blue primarily on the right of the label); and (5) the ROTELLA® T brand name in black letters displayed on a white stripe about one-third of the way from the top of the label, with the SHELL house mark and logo appearing in the upper left corner of the label.[9]

---

[8] *See Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 697 (5th Cir. Unit A Oct. 1981) (recognizing concept of "family" trade dress across different products).

[9] Likewise, Shell's packaging for its SAE 30 product pictured in the joint display shown at paragraph 23 of its Amended Complaint is virtually indistinguishable from the 2007 packaging and encompasses all of the elements of Shell's asserted trade dress. (*Compare* Am. Compl. ¶ 12 *with* Am. Compl. ¶ 23.) Defendants' argument to the contrary lacks credibility.

7

The cases cited by defendants where courts found trade dress unprotectable for not being specifically defined or defined too broadly are simply inapposite here. For instance, in *Yurman Design v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), the plaintiff *never even identified* the specific elements of its asserted trade dress for a jewelry line consisting of 18 different pieces. In *Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*, 667 F. Supp. 1221, 1225 (N.D. Ill. 1987), the plaintiff vaguely asserted trade dress rights in "unusual contrasting color combinations of bold colors" for a camera design. And in *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997), the plaintiff sought trade dress protection for a line of furniture described as "floating" or "suspended." In contrast to all of these cases (which involve product configuration, not product packaging, discussed *infra*), Shell has *specifically* enumerated the elements of its trade dress and defined it in terms of the overall appearance of its 2007 and 2009 packaging.

### III. Defendants' Anticompetitive Concerns Are Misplaced and Ignore the Critical Distinction Between Product Configuration and Product Packaging Trade Dress

Defendants assert that Shell seeks to have a monopoly over "any white, dual handle bottle with a black cap and a blue and yellow label." This, of course, is not the case as Shell's trade dress claims are not that broad. Shell seeks trade dress protection only for its *specific version* of a white, dual-handle container with a black cap and blue-and-yellow label, as set forth in its 2007 and 2009 packaging versions above, and seeks only to prevent others from using trade dress that is confusingly similar to Shell's. In fact, Shell is the first to admit (indeed, assert) there are likely many ways to make a white, dual-handle container with blue and yellow on the label so as to not infringe Shell's trade dress rights. Defendants merely lacked the motivation to do so, because they had decided instead to copy virtually every salient feature of Shell's trade dress to produce a packaging substantially similar in overall appearance.

The fact there are virtually an unlimited number of ways to configure product packaging (as opposed to a product design) is precisely the reason that according trade dress protection to product packaging generally does not raise anticompetitive concerns. *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 426 n.7 (5th Cir. 1984) ("The reasons for requiring proof of secondary meaning are particularly diminished when applied to distinctive packaging. . . . The wide range of available packaging and design options allows a producer to appropriate a distinctive identity without unduly hindering his competitors' ability to compete."); *Fiji Water Co. v. Fiji Mineral Water USA,* 2010 WL 3835673, at *4 (C.D. Cal. Sept. 30, 2010) ("Since competitors routinely use alternative designs in packaging their bottled water products, protecting the particular combination of elements of the FIJI packaging will not hinder competition in the bottled water industry.") (copy attached at Exhibit 3). It is also the reason courts generally find product packaging to be inherently distinctive and immediately protectable. *Chevron*, 659 F.2d at 703 (because the possible varieties of packaging are "virtually endless," the principal question in a trade dress case involving packaging is "whether or not the public is likely to be confused, rather than whether the first comer's trade dress has acquired secondary meaning").

In contrast, because there are generally a finite number of ways to configure a product, to preserve free and robust competition courts are much more cautious in granting trade dress protection to product design and *always* require that secondary meaning be established. *Wal-Mart*, 529 U.S. at 212. Not surprisingly, all of the cases defendants cite in which anticompetitive concerns were raised involved *product design*, not *product packaging*. *Yurman Design*, 262 F.3d at 116 ("Product design is driven primarily by the usefulness or aesthetic appeal of the object; trade dress protection for product design therefore entails a greater risk of impinging on ideas as compared with protection of packaging or labeling."); *Landscape Forms*, 113 F.3d at 380 (noting

that "courts have exercised particular 'caution' when extending protection to product designs" due to anticompetitive concerns). Defendants' reliance on these cases to argue that protecting Shell's *packaging* will hinder competition—although any number of alternative packaging configurations were available to defendants—is thus misplaced.

## IV. Defendants' Other Arguments Are Without Merit

As corroborating evidence of inherent distinctiveness, in its moving brief Shell cited fifty responses in its secondary meaning survey where respondents pointed to specific features of Shell's trade dress (*e.g.*, "arch of handle/bottle style," "shape of container/color," "color scheme," etc.) as the reason for answering why they identified a masked ROTELLA container as being a Shell or ROTELLA product. Shell never claimed its reliance on these responses for purposes of this motion was scientific, as defendants are correct that *inherent* distinctiveness is generally not established through survey evidence. However, the fact numerous respondents identified *specific features* of Shell's trade dress as the reasons for their positive answer is direct, marketplace evidence that many consumers view those features as inherently source-identifying.

Finally, defendants assert that Shell's 2009 packaging "adopted some elements of the revised label" that Warren introduced after receiving Shell's protest letter. (Defs.' Br. 8.)[10] Shell's project manager who implemented the 2009 label change testified that all of these changes were made totally independent of and without reference to defendants' LUBRIGUARD product. (Ex. 6, Ochoa Dep. 132:22-133:11, June 15, 2010.) This evidence is uncontroverted.

## CONCLUSION

For the reasons above, Shell requests its partial summary judgment motion be granted.

---

[10] Although the photograph of the original and revised LUBRIGUARD packaging shown on pages 7 and 8 of defendants' opposition brief appears to show the revised label on a slightly smaller container, in reality the containers themselves did not change and are identical. (Ex. 4, Warren Dep. 262:17-263:4, Mar. 24, 2010; Ex. 5, Sweat Dep. 25:6-13, Feb. 23, 2010.)

Dated: December 20, 2010                    Respectfully submitted,

**Of Counsel:**

|  |  |
|---|---|
|  | s/ Naresh Kilaru |
| Michael O. Sutton | Griffith B. Price, Jr. |
| State Bar No. 19535300 | Attorney in Charge |
| Southern District No. 5941 | District of Columbia Bar No. 429585 |
| Paul C. Van Slyke | Admitted Pro Hac Vice |
| State Bar No. 20457000 | Naresh Kilaru |
| Southern District No. 531 | District of Columbia Bar No. 478983 |
| Bruce J. Cannon | Admitted Pro Hac Vice |
| State Bar No. 24055258 | FINNEGAN, HENDERSON, FARABOW, |
| Southern District No. 675598 |   GARRETT & DUNNER, L.L.P. |
| LOCKE LORD BISSELL & LIDDELL LLP | 901 New York Avenue, N.W. |
| 600 Travis Street, Suite 3400 | Washington, D.C. 20001 |
| Houston, Texas 77002 | Telephone: 202-408-4000 |
| Telephone: 713-226-1200 | Facsimile: 202-408-4400 |
| Facsimile: 713-223-3717 | gbprice@finnegan.com |
| msutton@lockelord.com | naresh.kilaru@finnegan.com |
| pvanslyke@lockelord.com |  |
| bcannon@lockelord.com | **ATTORNEYS FOR PLAINTIFFS** |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing is being filed electronically in compliance with Local Rule 5.1 on December 20, 2010. As such, notice of electronic filing is being served on all counsel of record by the Court's electronic filing system. Further, pursuant to an agreement between the parties, a true and correct copy is being served via email on all attorneys of record.

s/ Naresh Kilaru_____