UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHELL TRADEMARK MANAGEMENT B.V. and SHELL OIL COMPANY, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:09-CV-2851 |
| vs. | § § | |
| WARREN UNILUBE, INC. and WARREN OIL COMPANY, INC., | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
TO EXCLUDE THE REPORTS AND TESTIMONY
OF DEFENDANTS' PROPOSED EXPERT MICHAEL A. PASCHALL**

**Of Counsel:**

| | |
|---|---|
| Michael O. Sutton | Griffith B. Price, Jr. |
| State Bar No. 19535300 | Attorney in Charge |
| Southern District No. 5941 | District of Columbia Bar No. 429585 |
| Paul C. Van Slyke | Admitted Pro Hac Vice |
| State Bar No. 20457000 | Naresh Kilaru |
| Southern District No. 531 | District of Columbia Bar No. 478983 |
| Bruce J. Cannon | Admitted Pro Hac Vice |
| State Bar No. 24055258 | FINNEGAN, HENDERSON, FARABOW, |
| Southern District No. 675598 | GARRETT & DUNNER, L.L.P. |
| LOCKE LORD BISSELL & LIDDELL LLP | 901 New York Avenue, N.W. |
| 600 Travis Street, Suite 3400 | Washington, D.C. 20001 |
| Houston, Texas 77002 | Telephone: 202-408-4000 |
| Telephone: 713-226-1200 | Facsimile: 202-408-4400 |
| Facsimile: 713-223-3717 | gbprice@finnegan.com |
| msutton@lockelord.com | naresh.kilaru@finnegan.com |
| pvanslyke@lockelord.com | |
| bcannon@lockelord.com | **ATTORNEYS FOR PLAINTIFFS** |

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Paschall's Assertion That He Is An Expert In Calculating Damages In Intellectual Property Cases Is Groundless ...............................................................1

    B. Paschall's Assertion That His Methodology For Determining Defendants' Profits Was Consistent With Controlling Legal Precedents Is Groundless ......................................................................................3

        1. Paschall Did Not Determine That Each Category Of Expense He Deducted Was Either Incurred In Connection With, Or Increased As A Result Of, Defendants' Production And Sale Of LUBRIGUARD ........................................................................................4

        2. Defendants' Attempt To Distinguish The Cases Plaintiffs Rely Upon Is Groundless...................................................................................6

    C. Despite Acknowledging The Omissions In His Reports, Paschall Has Still Failed To Correct Their Defects........................................................................9

III. CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   642 F. Supp. 2d 276 (S.D.N.Y. 2009) ................................................................................7

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
   slip op., 2010 WL 2662720 (N.D. Ga. June 30, 2010) ....................................................7, 8

*Holbrook v. Lykes Bros S.S. Co., Inc.*,
   80 F.3d 777 (3d Cir. 1996) ..................................................................................................3

*Hospitality International v. Mahtani*,
   1998 WL 35296447 (M.D.N.C. Aug. 3, 1998) ....................................................................8

*Joy Mfg. Co. v. CGM Valve & Gauge Co.*,
   730 F. Supp. 1387 (S.D. Tex. 1989) ....................................................................................4

*Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*,
   752 F.2d 1326 (9th Cir. 1984) .............................................................................................7

*Maltina Corp. v. Cawy Bottling Co.*,
   613 F.2d 582 (5th Cir. 1980) ....................................................................................... passim

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
   885 F.2d 1 (2d Cir. 1989) ....................................................................................................9

*Nike Inc. v. Variety Wholesalers, Inc.*,
   274 F. Supp. 2d 1352 (S.D. Ga. 2003), *aff'd without op.,* 107 F. App'x 183 (11th Cir.
   2004) ....................................................................................................................................8

*Pillsbury Co. v. Southard*,
   682 F. Supp. 497 (E.D. Okla. 1987) ...............................................................................6, 11

*Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Florida*,
   546 F. Supp. 987 (S.D. Fla. 1982) ......................................................................................9

*Seitz v. Envirotech Systems Worldwide Inc.*,
   2008 WL 656513 (S.D. Tex. Mar. 6, 2008) ........................................................................2

*Shell Trademark Mgmt. BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co.*,
   slip op., 2009 WL 2105933 (W.D.N.C. July 13, 2009) ......................................................8

*Smolow v. Hafer*,
   513 F. Supp. 2d 418 (E.D. Pa. 2007) ..................................................................................3

**FEDERAL STATUTES**

15 U.S.C. § 1117................................................................................................................3, 4, 6

**RULES**

Rule 26(a)(2)(B), Fed. R. Civ. P..............................................................................................1, 10

**TREATISES AND OTHER AUTHORITIES**

Elizabeth A. Evans & Peter P. Simon, *Economic Analysis of Nonpatent Intellectual Property Rights and Damages Measures,* in Litigation Services Handbook: The Role of the Financial Expert (4th ed. 2007) .....................................................................................1

Russell L. Parr, Intellectual Property Damages: Valuation, Exploitation, and Infringement Damages (2d ed. 1999) ................................................................................................2

Mark A. Glick et al., Intellectual Property Damages: Guidelines and Analysis (2003)...................2

Patrick J. Flinn, Handbook of Intellectual Property Claims and Remedies (Aspen Publishers 2000, 2010 Supp.) .............................................................................................2

Terrence P. Ross, Intellectual Property Law: Damages and Remedies (Law Journal Press 2007) ...............................................................................................................................2

Roman L. Weil et al., Litigation Services Handbook: The Role of the Financial Expert (3d ed. 2001) ..............................................................................................................2, 10

I.   INTRODUCTION

Defendants' Memorandum in Opposition to plaintiffs' motion in no way undermines the grounds upon which plaintiffs submit that motion should be granted, as follows:

- Mr. Paschall is not an expert in determining damages in trademark or trade dress infringement cases, as is confirmed by his erroneous assertion that an infringer's profits in connection with a trade dress case are determined in the same way that profits are determined in other business contexts;

- The methodology Mr. Paschall applied in his analysis of defendants' profits on infringing sales of LUBRIGUARD does not comply with the requirements of the Lanham Act and controlling cases, because he failed to determine whether the expenses he deducted either were incurred directly in connection with, or increased as a result of, their infringing sales of LUBRIGUARD; and

- Mr. Paschall's expert reports did not, and still do not, comply with the requirements of Rule 26(a)(2)(B), Fed. R. Civ. P., because he has still not provided a complete list of all documents and information he considered in his analysis, and plaintiffs have been prejudiced by that omission.

II.  ARGUMENT

   A.   Paschall's Assertion That He Is An Expert In Calculating Damages In Intellectual Property Cases Is Groundless

In their brief in opposition to plaintiffs' motion, defendants argue that Mr. Paschall is qualified as a damages expert in intellectual property (IP) cases, because he is "experienced with and competent in calculating profits and damages" in other contexts and because he testified that "the calculation of damages [in an IP case] is the same exercise and analysis, no matter what the reason may be." (Defs.' Opp'n to Pls.' Mot. to Exclude 4-5; Ex. 1, Paschall Dep. 22:8-10, Oct. 28, 2010.) But determining damages in IP cases is *not* the same as determining profits for a company's P&L statement or tax return.[1] Determining damages in an IP case is different, and

---

[1] *See, e.g.,* Elizabeth A. Evans & Peter P. Simon, *Economic Analysis of Nonpatent Intellectual Property Rights and Damages Measures,* in Litigation Services Handbook: The Role of the Financial Expert 20:30 (4th ed. 2007) ("none of the methods [generally applied to determine a trademark infringer's profits on infringing sales] follows generally accepted accounting principles governing the presentation of corporate financial information.") (copy attached at Exhibit 2).

requires an analysis that goes far beyond the across-the-board deduction of an allocation of *all* of an infringer's indirect and overhead expenses that Mr. Paschall applied. His analysis fails to satisfy those requirements, confirming that he is not an expert in the IP damages field.[2]

It is well established in this Circuit that in determining a trademark or trade dress infringer's profits, the alleged infringer has the burden of proving that any costs it claims should be deducted either *increased as a result of,* or at least had some *direct connection with,* those sales. *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 585 (5th Cir. 1980) (*see* discussion *infra* pp. 3-6). Standard reference works and treatises on the subject of IP damages agree on those requirements and generally reject the use of "fully loaded" or "full absorption" deduction of overhead expenses because that approach would permit the infringer to support its other operations with revenues from the infringement—*i.e.,* to profit from its wrongdoing.[3]

---

[2] Defendants' effort to distinguish *Seitz v. Envirotech Systems Worldwide Inc.,* 2008 WL 656513 (S.D. Tex. Mar. 6, 2008) (copy attached at Exhibit 3), misses the point. In *Seitz*, just as in this case, the proffered expert had no experience in damage analysis in IP cases, and his experience in other fields (financial underwriting in *Seitz,* business valuation in this case) was irrelevant to the issue in the case at bar (lost profits and reasonable royalty in *Seitz,* defendants' profits on infringing sales in this case). There is no meaningful basis for distinction.

[3] *See, e.g.,* Patrick J. Flinn, Handbook of Intellectual Property Claims and Remedies § 8.04[A] (Aspen Publishers 2000, 2010 Supp.) (copy attached at Exhibit 4) ("In general … an infringer is allowed to deduct only the marginal costs of infringement: those costs which the infringer would not have incurred but for the sale of the infringing goods or services.") (*citing Maltina*); Terrence P. Ross, Intellectual Property Law: Damages and Remedies § 4.03[3] (Law Journal Press 2007) (identifying four approaches to determining defendant's profits and endorsing incremental cost approach as "best serv[ing] the purposes of Section 35(a) of the Lanham Act" and describing "fully allocated cost approach" as "generous to infringers" because it, and the other approaches allowing deduction of overhead, allow the infringer to "benefit[] from the act of infringement by the reduction of costs it would have had to bear even if it had respected the intellectual property rights of another.") (copy attached at Exhibit 5); Mark A. Glick et al., Intellectual Property Damages: Guidelines and Analysis 333 (2003) ("The correct rule is that only incremental costs (fixed and variable) should be deducted.") (copy attached at Exhibit 6); Russell L. Parr, Intellectual Property Damages: Valuation, Exploitation, and Infringement Damages 191-93 (2d ed. 1999) (identifying "direct approach" under which deduction of overhead expenses "will not be allowed unless defendant can show that such expenses increased due to production of the infringing product" and citing *Maltina* for Fifth Circuit application of that rule; distinguishing overhead allocation rule permitted by Second, Third, and Ninth Circuits in certain cases) (copy attached at Exhibit 7); Roman L. Weil et al., Litigation Services Handbook: The Role of the Financial Expert 21:18-19 (3d ed. 2001) (describing
*(fn. continued)*

Mr. Paschall's assertion that the methodology for calculating profits in a trade dress accounting is the same as in any other business context is therefore wrong. Clearly, Paschall was either unaware of, or simply ignored, the authorities and precedents that hold otherwise, and his experience in the latter context in no way qualifies him as an expert in the field of IP damages.[4] His error in assuming that deduction of all costs and allocation of all elements of overhead is proper in a trade dress accounting, simply because it may be appropriate in other business contexts, confirms his own testimony that he lacks any expertise in the IP field and has no knowledge of the methodology to be applied. (Ex. 1 at 21:10-12, 27:4-14, *quoted in* Defs.' Opp'n 6.)

### B. Paschall's Assertion That His Methodology For Determining Defendants' Profits Was Consistent With Controlling Legal Precedents Is Groundless

In this Circuit, an adjudicated trademark or trade dress infringer[5] seeking to deduct expenses and/or overhead from its profits in an accounting has the burden of proving that the expenses were directly related to, and/or that its overhead increased because of, its production and sale of the infringing product. Absent such proof, the plaintiff is entitled to recover the defendant's "entire gross profit" from sales of the infringing product. *Maltina,* 613 F.2d at 586-

---

*(fn. continued from previous page)*
"incremental," "contribution" or "direct assistance," and "full absorption" approaches and identifying "incremental" approach as applicable in the Fifth Circuit) (copy attached at Exhibit 8).

[4] Defendants cite *Smolow v. Hafer,* 513 F. Supp. 2d 418 (E.D. Pa. 2007), and *Holbrook v. Lykes Bros S.S. Co., Inc.,* 80 F.3d 777 (3d Cir. 1996), in support of their assertion that Mr. Paschall should be allowed to testify despite his lack of knowledge in the IP damages field. But neither of those cases from the Third Circuit is relevant. *Holbrook* was a treating physician case, and in *Smolow* the court noted that a proffered expert must "at a minimum . . . possess skill or knowledge greater than the average layman," 513 F. Supp. 2d at 426 (citation omitted). Here, Mr. Paschall has acknowledged that he has *no* knowledge of the methodology applicable to an accounting of profits in a trade dress infringement case.

[5] Defendants expend considerable effort in arguing that the need for an accounting, and in particular the burden-shifting effect of 15 U.S.C. § 1117, has not arisen because they have not yet been found liable for infringement. (Defs.' Opp'n 2-3.) This is a red herring. Plaintiffs, of course, do not dispute that unless and until defendants are found liable, plaintiffs will not be entitled to an accounting of defendants' profits on sales of LUBRIGUARD.

87 (citing 15 U.S.C. § 1117 and denying deduction of claimed expenses and allocation of overhead absent proof that the expenses "actually related" to, or that overhead "actually increased" because of the defendant's production and sale of the infringing product).[6]

In the face of *Maltina* and the other treatises and authorities above, Mr. Paschall blithely calculated defendants' profits on infringing sales of LUBRIGUARD by deducting an allocation of *all* of their expenses of doing business—without analyzing whether those expenses increased as a consequence of those sales, without considering whether they directly contributed to those sales, and without attempting to justify his allocated deductions in any other way.

**1. Paschall Did Not Determine That Each Category Of Expense He Deducted Was Either Incurred In Connection With, Or Increased As A Result Of, Defendants' Production And Sale Of LUBRIGUARD**

Defendants assert that Mr. Paschall "sought to quantify or tie each expense that was necessary to the production of the Lubriguard product to the deductions taken to determine the profitability of Lubriguard" and that "[b]ecause the Lubriguard product could not have been manufactured, packaged and/or sold without each of these costs of production, it was entirely appropriate for Mr. Paschall to include overhead costs." (Defs.' Opp'n 7, 11.)

Neither of these assertions is correct. First, Paschall did *not* tie each category of expense or overhead that he deducted to defendants' accounting records so as to confirm that they were "necessary to the production of [LUBRIGUARD]." On the contrary, as he testified at his deposition, "I did not feel that I had to tie everything back to each individual line item on [defendants'] trial balance, because the financial controls at this company are so good." (Ex. 1 at

---

[6] *See also Joy Mfg. Co. v. CGM Valve & Gauge Co.,* 730 F. Supp. 1387, 1395 (S.D. Tex. 1989) (infringer "failed to prove or offer to prove any elements of cost or deduction claimed," so plaintiff "is entitled to an award of the full amount" of infringer's sales); Restatement (Third) of Unfair Competition § 37 cmt. g (1995) (only costs that directly assisted in production and sale of infringing goods may be deducted) (copy attached at Exhibit 9).

4

122:4-123:3.) In other words, Paschall made no independent determination that the expenses he deducted were "necessary to the production of [LUBRIGUARD]," and neither his report and testimony, nor defendants' brief in opposition, provide any evidentiary basis for concluding that they were. Accordingly, they cannot be deducted from defendants' revenues on LUBRIGUARD in order to establish its profits. *Maltina*, 613 F.2d at 586 (deduction of advertising, sales commissions, telephone, legal fees, and "other" expenses disallowed where defendant failed to prove that such expenses "actually related" to the infringing product).

Second, Mr. Paschall did *not* determine that any category of overhead expense that he deducted increased, or would not have been incurred, but for the production and sale of LUBRIGUARD. On the contrary, he testified unequivocally at his deposition he did *not* make any such determination with respect to, *inter alia,* maintenance and warehousing, administrative and plant overhead, selling expense and management fees, amortization, depreciation and interest, and so on. (Ex. 1 at 89:6-91:3, *quoted in* Pls.' Mot. 9-10.) Instead, he simply deducted an allocation of *all* of defendants' operating expenses from its net revenues on LUBRIGUARD less cost of goods sold. (Pls.' Mot. 10.) This approach fails to satisfy defendants' burden of proving that any allocation for overhead should be deducted from their profits. *Maltina,* 613 F.2d at 586 (defendant failed to carry its burden of establishing that production of the infringing product "actually increased its overhead expenses").

Despite his failure to make the required determinations, Mr. Paschall deducted allocated overhead including, but not limited to, storage of base oils and additives, blending finished product, storage of finished product, storage of containers and cartons, cost of packaging, shipping department operations, loading costs, personnel costs, administrative costs, and so on.[7]

---

[7] Defendants criticize plaintiffs' damage expert for declining to deduct these expenses (Defs.' Opp'n 9-10), but it is defendants' burden, not plaintiffs', to prove that they are proper. 15 U.S.C. § 1117.

(Defs.' Opp'n 9.) Whether or not *these* costs "actually increased [defendants'] overhead expenses," however—a matter as to which defendants have the burden of proof, but which they have failed to carry— Paschall *also* deducted an allocation for each of the following categories of overhead, and others, without any effort to establish that they were proper:

- Subscriptions
- Interest Expense
- Airline & Rental Car
- Employee Personal Car Mileage
- Personnel Expense Reports
- Relocation Expenses
- Software Maintenance
- Tank Car Rental & Tracking
- Ink/Ribbons

- Business Meetings
- Stretch Wrap
- Cleaning & Misc Supplies
- Temporary Help
- Pest Control
- Lab supplies and instruments
- Repairs – Other
- Management fee (including sourcing, production, marketing, sale and transportation)

(Ex. 1 at 120:19-123:6; Ex. 13.)

In short, defendants' assertion that because "the Lubriguard product could not have been manufactured, packaged, and/or sold without each of these costs of production [referred to in their brief], it was entirely appropriate for Mr. Paschall to include overhead costs" (Defs.' Opp'n 11), is simply sleight of hand, because he allocated and deducted *all other elements of defendants' indirect and overhead costs* as well—and he did not consider whether *any* of them "actually related to" or "actually increased with" defendants' production and sale of Lubriguard.[8]

For all these reasons, defendants' cavalier assertion that *Maltina* "is not applicable or controlling here" (Defs.' Opp'n 11), is wrong.

### 2. Defendants' Attempt To Distinguish The Cases Plaintiffs Rely Upon Is Groundless

Defendants next assert *Maltina* "has been criticized as based on unpersuasive grounds" and "should be so rejected here." (*Id.*) But defendants cite *no authority whatsoever* to suggest

---

[8] *Cf. Pillsbury Co. v. Southard,* 682 F. Supp. 497, 501 (E.D. Okla. 1987) (denying deduction for "blanket, undifferentiated, unidentified category of 'overhead' or 'checks written'" and awarding defendant's profits without deduction of any element of cost).

6

that *Maltina* is no longer controlling precedent in this Circuit.[9] In fact, *Maltina* is not only still the law in the Fifth Circuit, but has also enjoyed recent and widespread reliance in other courts.

For example, in *Flowers Bakeries Brands v. Interstate Bakeries Corp.,* slip op., 2010 WL 2662720 (N.D. Ga. June 30, 2010) (copy attached at Exhibit 10), the court held that a defendant must support an assertion of deductible costs with corroborating documents and that summarizing costs is not enough. *Id.* at *13 (*citing Maltina,* 613 F.2d at 586)). The court also held a defendant must prove that any costs it deducts are actually related to the sale of the infringing product:

> This usually means that a defendant must assert "variable" costs that are only incurred because of the infringing product. But a defendant may be able to assert a proportion of "fixed" costs (such as overhead), if the defendant can show that the infringing product "actually increased overhead expenses" and that the sales of the infringing product were more than "a small percentage of total sales."

*Id.* (internal citations omitted). [10]

---

[9] The only cases defendants cite for their anti-*Maltina* argument are a case from the Ninth Circuit, *Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326 (9th Cir. 1984), and a case from the Southern District of New York, *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 642 F. Supp. 2d 276 (S.D.N.Y. 2009). (Defs.' Opp'n 11.) Both of these cases discussed *Maltina* in connection with its subsidiary holding that an allocation of overhead is inappropriate when infringing sales represent only a small fraction of a defendant's total sales (*see* Pls.' Mot. 10 n.6)—not its principal holding that a defendant must prove a direct connection with the infringing product before deducting expenses, and incremental costs before deducting overhead.

In fact, *Fendi,* like *Maltina,* held that "every infringer must show a 'strong nexus', that is, it must demonstrate that the expense 'was of actual assistance in the production, distribution or sale of the infringing product.'" 642 F. Supp. 2d at 291 (citation omitted). Likewise, *Kamar* (a copyright case) also held that "[t]he real question . . . is whether any of the overhead expenses were caused by the production or sale of the infringing goods . . . . [The goal of deterring infringement] can best be achieved by allowing a deduction for overhead only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product." 752 F.2d at 1332.

In any event, recent cases, cited in the text above, have continued to rely on *Maltina* for both its principal holding and also its subsidiary, percentage-of-sales holding that defendants' cases discussed.

[10] *Flowers* also cited *Nike Inc. v. Variety Wholesalers, Inc.,* 274 F. Supp. 2d 1352, 1373 (S.D. Ga. 2003) (declining to deduct corporate overhead and occupancy costs on the ground that defendant would have incurred the costs regardless of sale of the infringing product, and declining to deduct payroll, advertising

*(fn. continued)*

Likewise, in *Shell Trademark Management BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co.,* slip op., 2009 WL 2105933 (W.D.N.C. July 13, 2009) (copy attached at Exhibit 11), the court noted that "courts have repeatedly disallowed the deduction of costs which the defendant is unable to prove to be directly attributable to the sale of the infringing goods or services." *Id.* at *3. Defendant sought to deduct overhead expenses from its gross profits, and calculated the allocation of overhead and operating costs by using a sales ratio approach. However, defendant's expert testified that he was unable to identify any expenses or costs attributable *solely to the sales of the infringing product.*

The court held that defendant would have incurred these fixed costs regardless of its infringing activity, and that they therefore could not be deducted from its infringing revenues. Accordingly, the court entered judgment for the full amount of defendant's gross profits from sales of the infringing product.

> [T]his Court concludes that it would be inequitable to deduct overhead expenses from the gross profits without a clearer showing of costs associated with the sale of the [infringing product]. . . .
>
> [Defendant] needed to provide proof that its overhead costs were incurred in connection with the sale of [that product]. This is particularly necessary here where most of [defendant]'s costs were fixed costs that [defendant] would have incurred regardless of its infringing sales.

Similarly, in *Hospitality International v. Mahtani,* 1998 WL 35296447 (M.D.N.C. Aug. 3, 1998) (copy attached at Exhibit 12), the court noted "defendant must prove that the type of cost or deduction is *allowed* to be deducted from defendant's sales under the Lanham Act."

---

*(fn. continued from previous page)*
expenses, and operating expenses because defendant could not show whether any of these costs assisted in the sale of the accused goods), *aff'd without op.,* 107 F. App'x 183 (11th Cir. 2004)).

The *Flowers* court denied plaintiff's motion for summary judgment on the issue of defendant's profits on the grounds that defendant's submission of (1) actual standard cost information for the infringing product, and (2) individual invoices for marketing, promotion, and advertising expenses for the infringing product was sufficient to raise an issue of fact for trial.

> [C]ourts usually have allowed the infringer to deduct only marginal costs (*i.e.,* those costs which the infringer would not have incurred but for the sale of the infringing goods or services). Courts have repeatedly disallowed the deduction of costs which the defendant is unable to prove to be directly attributable to the sale of the infringing goods or services. For example, courts have disallowed deduction of overhead expenses where the infringer fails to satisfy its burden of proving a sufficient nexus between each claimed expense and the sale of the unlawful goods.

*Id.* at *9 (*citing Maltina,* 613 F.2d at 585, and *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1 (2d Cir. 1989)).

In *Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Florida,* 546 F. Supp. 987 (S.D. Fla. 1982), defendant sought to deduct a proportionate share of its overhead expenses after conceding it would be impossible to prove specific costs associated with the infringing goods. The court held that defendant was entitled to those deductions only upon a showing that sales of the infringing goods actually increased its total expenses. Citing *Maltina,* the court noted that "the Fifth Circuit has refused to allow such a deduction where, as here, the infringing sales constituted only a minute fraction of the defendant's total sales." *Id.* at 998. In *Playboy*, the sales of the infringing product over four years constituted less than 2% of defendant's combined sales for the year ending June 30, 1980. The court accordingly held that defendant could not deduct a proportionate share of its overhead expenses.

In short, defendants' argument that *Maltina* "has been rejected by several courts and should be so rejected here" is overreaching and unfounded. *Maltina* is still controlling in this Circuit, and its requirement that defendants must show a direct connection between expenses and their sales of LUBRIGUARD and that overhead increased because of sales of LUBRIGUARD before deducting them is fully applicable in this case.

### C. Despite Acknowledging the Omissions In His Reports, Paschall Has Still Failed To Correct Their Defects

Defendants assert that Paschall's Reports (Pls. Mot. Ex. 1) contained all of the

information required by Rule 26(a)(2)(B), Fed. R. Civ. P., *except for* (1) a list of other cases in which he has testified in the last four years and (2) his compensation in this case.[11] (Defs.' Opp'n 12.) This is not the case. As plaintiffs pointed out, Mr. Paschall also failed to identify all "facts or data considered by the witness" in conducting his analysis and forming his opinions in the case. (Pls.' Mot. 11.) Defendants entirely ignore this omission in their brief in opposition, *and it has never been cured.*

On the contrary, Mr. Paschall has still failed to provide a comprehensive list of all documents he considered, whether or not he relied upon them in his analysis.[12] But these may include *the very documents that plaintiffs would need to have* in order unequivocally to confirm that Mr. Paschall did not determine, or attempt to determine, any nexus between the elements of expense and allocated overhead that he deducted and defendants' infringing sales. The prejudice to plaintiffs is manifest. *Pillsbury,* 682 F. Supp. at 500 (noting that defendant's "incomplete, inaccurate, and dilatory discovery" of its financial information "handcuffed" plaintiff in its ability to present full and complete evidence of defendant's sales and awarding defendant's profits without any deduction for costs or overhead).

## III. CONCLUSION

For the reasons stated, plaintiffs respectfully submit that their *Daubert* motion to exclude Mr. Paschall from testifying at trial should be granted.

---

[11] Each of these omissions would alone justify excluding Mr. Paschall's testimony and cannot be excused as mere "technical deficiencies" as defendants argue. (Defs.' Opp'n 13; *see cases cited* Pls.' Mot. 12-13.) And the requirement that this information must be included is no arcane procedural requirement known only to attorneys and the courts. *See* Weil et al., Litigation Services Handbook: The Role of the Financial Expert 1:11 (3d ed. 2001) (copy attached at Exhibit 8) (quoting Rule 26(a)(2)(B) as establishing disclosure prerequisites for experts to testify in federal courts and stating that report containing required disclosures must be produced to other parties "before the court will allow the expert to testify at trial.").

[12] For example, Paschall did not list Mr. Sanderson's deposition transcript and exhibits—by any measure documents of central importance to determining defendants' profits on sales of LUBRIGUARD—and was equivocal about whether other documents he considered may have been omitted. *See* Pls.' Mot. 11; Ex. 1 at 14:3-9.

Dated: December 20, 2010                                   Respectfully submitted,

**Of Counsel:**

|  |  |
|---|---|
| | s/ Naresh Kilaru |
| Michael O. Sutton | Griffith B. Price, Jr. |
| State Bar No. 19535300 | Attorney in Charge |
| Southern District No. 5941 | District of Columbia Bar No. 429585 |
| Paul C. Van Slyke | Admitted Pro Hac Vice |
| State Bar No. 20457000 | Naresh Kilaru |
| Southern District No. 531 | District of Columbia Bar No. 478983 |
| Bruce J. Cannon | Admitted Pro Hac Vice |
| State Bar No. 24055258 | FINNEGAN, HENDERSON, FARABOW, |
| Southern District No. 675598 | GARRETT & DUNNER, L.L.P. |
| LOCKE LORD BISSELL & LIDDELL LLP | 901 New York Avenue, N.W. |
| 600 Travis Street, Suite 3400 | Washington, D.C. 20001 |
| Houston, Texas 77002 | Telephone: 202-408-4000 |
| Telephone: 713-226-1200 | Facsimile: 202-408-4400 |
| Facsimile: 713-223-3717 | gbprice@finnegan.com |
| msutton@lockelord.com | naresh.kilaru@finnegan.com |
| pvanslyke@lockelord.com | |
| bcannon@lockelord.com | **ATTORNEYS FOR PLAINTIFFS** |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing is being filed electronically in compliance with Local Rule 5.1 on December 20, 2010. As such, notice of electronic filing is being served on all counsel of record by the Court's electronic filing system. Further, pursuant to an agreement between the parties, a true and correct copy is being served via email on all attorneys of record.

s/ Naresh Kilaru_____